UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **BRIAN BENICK,** | ) | CASE NO. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE |
| | ) | |
| **NANOGATE NORTH AMERICA, LLC** | ) | |
| **A DIVISION OF TECHNIPLAS US, LLC** | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF REMOVAL

**TO:** UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO,
EASTERN DIVISION

COME NOW, Defendant, Nanogate North America, LLC, a Division of Techniplas US, LLC (hereinafter, "Nanogate"), by and through undersigned counsel, and hereby files its Notice of Removal of this action from the Courts of Common Pleas for Richland County, Ohio, to the United States District Court for the Northern District of Ohio, Eastern Division. In support thereof, Defendant respectfully states to this Honorable Court as follows:

**A.     The Circuit Court Action**

1. On July 25, 2022, Plaintiff Brian Benick ("Plaintiff") filed a Complaint in the Courts of Common Pleas for Richland County, Ohio, entitled *Brian Benick v. Nanogate North America, LLC division of American Techniplas Group*, Case No. 2022 CV 0355 R (the "Lawsuit") against Nanogate. (Copy of State Court File and Docket Sheet attached hereto as Exhibit A).

2. Plaintiff filed the above titled action pro se.

3. The summons was served upon Nanogate by regular U.S. Mail pursuant to Ohio CIV. R. 4.6(D).

4. The Lawsuit alleges that Plaintiff is a resident of Mansfield, Richland County, and the State of Ohio.

5. Defendant is a foreign limited liability company incorporated in the State of Delaware with a principal place of business located at 150 E. Longview Ave, Mansfield, OH 44903-4206.

6. Defendant is furthermore a subsidiary of Techniplas North America, Techniplas US LLC, a foreign limited liability company incorporated in the State of Wisconsin with a principal place of business located at N44W33341 Watertown Plank Road, Nashotah, WI 53058.

7. Defendant is not incorporated in the State of Ohio.

8. The Lawsuit alleges damages over $75,000.00. Specifically, prayers contained in the Complaint request "damages of $2,900,000, for loss of income" (Ex. A).

9. A copy of all processes, pleadings, orders, and other documents contained in the state court file, as well as a copy of the state court docket sheet, are attached hereto as Exhibit A pursuant to 28 U.S.C. § 1446(a).

B. **Jurisdiction and Basis for Removal**

   a. **Federal Question Jurisdiction**

10. This Court has federal question jurisdiction over the Lawsuit in that Plaintiff has filed a complaint which is based on Federal law claims and State law claims pursuant to 28 U.S.C. § 1441(c).

11. Generally, federal-question jurisdiction is governed by the well-pleaded complaint rule which provides that federal jurisdiction exists only when a federal question is presented on the face of plaintiff's complaint. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475, 118 S. Ct. 921, 925, 139 L. Ed. 2d 912 (1998).

12. An "independent corollary" to the well-pleaded complaint rule is the principle that "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 22, 103 S.Ct. 2853, 77 L.Ed.2d 420 (1983). "If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint." *Rivet*, 522 U.S. 470, 475, 118 S. Ct. 921, 925 ("The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim.") *Id*.

13. In this matter, Plaintiff's Complaint only purported to bring state law causes of action; however, Plaintiff's Complaint cites to violations of various federal laws regarding OSHA, EPA, and Title VII actions.

   i. "This well is under the influence of surface water and functioning as a public water system, defined by EPA regulations, and located in an industrial area." (Compl. ¶ 1).

   ii. "Attached documentation demonstrates that Nanogate management failed to comply with OSHA training requirements (see pages 3 & 7), and even backdated federal training documentation." (Compl. ¶ 2).

3

    iii. "…management repeatedly failed to make sure forklift operators were documented as being trained prior to operating a forklift, as required by federal law." (Compl. ¶ 5).

    iv. "… regarding certain employees required to utilize hearing protection in accordance with federal law, which were continually ignored …Employees had to pay for earbuds that were not approved, although approved devices are required to be provided at no cost to employees in accordance with federal law." (Compl. ¶ 6).

    v. "… the plant manager, had to be notified several times to complete federally-required training documents. At the beginning of Plaintiff's tenure, the CEO and plant manager had not completed required annual training for several years." (Compl. ¶ 10).

    vi. "… complaints were made to OSHA by employees, to which Plaintiff had to respond. However, management never complied with Plaintiff's responses after Nanogate was fined by OSHA. Employees were not required by managers to wear protective footwear, and robots were not locked out, both items required by OSHA. Several employees notified Plaintiff they had been slammed into walls or knocked down by robots while cleaning the machines. OSHA requires that power supply to robots be shut off and breaker switch locked out during maintenance. Plaintiff was informed it was too much of a hassle because supervisors went home before employees were done cleaning live robots, which was reported to the CEO Plaintiff informed OSHA certain devices would be used to protect

      employees, but these were never used as promised by the CEO and other managers. Other facilities require their employees to wear steel-toed footwear, while this facility allowed employees to wear whatever they wanted, stating in their ads employees could wear "casual work attire." Employees wore items like skimpy shorts, halter tops, pajama pants and open-toed sandals, even working in their bare feet. Plaintiff strongly advised new employees during orientation to wear long jeans and steel-toed footwear, although Plaintiff had no authority over employee conduct. The CEO and plant manager placed Plaintiff in a position where he could have been fined or incarcerated for providing false claims to OSHA." (Compl. ¶ 12).

vii. "… the vice president of human resources repeatedly admonished Plaintiff for communicating violations and his assessments via email … HR VP took several steps to prevent Plaintiff from doing his job, … it was apparent to Plaintiff this person was assigned to stop Plaintiff from trying to do his job. Plaintiff was advised his goal was to protect employees from injury-the attached documents demonstrate his attempts to do so and the results. The HR VP harassed and bullied Plaintiff for attempting to do his job, claiming she was some type of expert, although she has never worked in health and safety, nor has a public health or environmental health degree …Plaintiff had no other option than to resign. Therefore, damages are … for requiring him to lie to OSHA, forcing him to accept backdated documents, preventing him from adequately protecting the employees, holding him responsible for

        the failure of others to comply with federal laws and ultimately bullying him to resign.

        The CEO told Plaintiff he was doing "an amazing job" on February 7, 2022, but the newly hired HR VP was evidently given blanket authority by the corporate CEO to do as she wished, compelling Plaintiff to resign the very next day.

        The management at this facility has nearly a total disregard for environmental protection, employee health and employee safety. (Compl. ¶ 14).

    viii.  Plaintiff complains … because of being forced to resign under harassment, and prevented from performing his duties to protect the environment and the health of approximately 194 employees, forced to lie to federal enforcement agencies, required to accept forged documents and exposed to potential fines and incarceration for the neglect of Nanogate management. (Compl. ¶ "Liability and Damages" Prayer).

    14.    In short, according to Plaintiff's Complaint most of his claims are premised on violations of federal statutes and regulations which culminated in his constructive discharge because of reporting and complaining of federal EPA and OSHA standards which are governed by federal law.

    15.    In the event this matter is removed without regard to citizenship or residence of the parties, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's remaining related state claims.

b. **Diversity Jurisdiction**

16. Alternatively, this Court has diversity jurisdiction over the Lawsuit in that Plaintiff is a citizen of Ohio and Defendant is a citizen of Delaware and Wisconsin within the meaning of 28 U.S.C. § 1332 and the amount in controversy exceeds $75,000.00.

C. **The Remaining Requirements for Removal have been Satisfied**

17. Venue for this removal action is proper in the United States District Court for the Northern District of Ohio, Eastern Division, because the territorial jurisdiction of this Court includes the Courts of Common Pleas for Richland County, Ohio, where Plaintiff's state Court action was pending at the time of removal. Removal to this Court is therefore proper under 28 U.S.C. § 1441(a).

18. No other parties of interest that may be properly joined who have citizenship in the State of Ohio exist.

19. Plaintiff's Complaint was mailed via Certified U.S. Mail on July 25, 2022, and received by Defendant on July 27, 2022. (Exhibit A).

20. This Notice of Removal is timely under 28 U.S.C. § 1446(b)(3) because it has been filed within thirty (30) days of the notice of Plaintiff's Complaint was provided to Defendant.

21. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal will be promptly filed with the Clerk for the Courts of Common Pleas for Richland County, Ohio, and written Notice of Removal will be provided promptly to Plaintiff.

D. **NON-WAIVER OF DEFENSES**

22. By removing this action from the Courts of Common Pleas for Richland County, Ohio, Defendant does not waive any defenses available to it.

23. By removing this action from the Courts of Common Pleas for Richland County, Ohio, Defendant does not admit any of the allegations in plaintiff's complaint.

WHEREFORE, Defendant requests that this Court assume jurisdiction of this action and make such further orders as may be required to properly determine this controversy.

Dated: August 15, 2022

Respectfully submitted,

**ROSS, BRITTAIN & SCHONBERG CO., LPA**

/s/ Evelyn P Schonberg.
Evelyn P. Schonberg (0020176)
6480 Rockside Woods Blvd. South, Ste. 350
Cleveland, OH 44131
Phone:216-447-1551
Fax:216-447-1554
Email:lynns@rbslaw.com

**McMAHON, BERGER, P.C**

/s/ James N. Foster, Jr.
James N. Foster Jr.*
2730 North Ballas Road
Suite 200
St. Louis, Missouri, 63131
(314) 567-7350
foster@mcmahonberger.com
hernandez@mcmahonberger.com

*Motion for Admission *Pro Hac Vice* to be submitted

**Attorneys For Defendant**
**Nanogate North America, LLC, A Division of Techniplas US, LLC**

## CERTIFICATE OF SERVICE

    I hereby certify that I have on this 18th day of August 2022, served a true and correct copy of the foregoing upon the following by depositing same with the United States Postal Service, first-class, postage prepaid, addressed as follows:

Brian Benick
936 Paxford Place
Mansfield, OH 44906-2911

                                               /s/ Evelyn P Schonberg.
                                               Evelyn P. Schonberg (0020176)