SUMMONS
Richland County Common Pleas Court of Ohio

BRIAN BENICK

CASE: 2022 CV 0355 R

VS

NANOGATE NORTH AMERICA LLC

NANOGATE NORTH AMERICA LLC
DIVISION OF AMERICAN TECHNIPLAS GROUP
150 E LONGVIEW AVE
MANSFIELD,OH 44903

You have been named Defendant (s) in a complaint filed in Richland County Court of Common Pleas, 50 Park Ave East, Mansfield, Ohio by

BRIAN BENICK
936 PAXFORD PLACE
MANSFIELD,OH  44906

Plaintiff (s). A copy of the Complaint is attached hereto. The name and address of the Plaintiff's Attorney is,

PRO SE

You are hereby summoned and required to serve upon the Court, your answer to the complaint within **28 days** after service of this summons on you, exclusive of the day of service. You must also serve a copy of the answer upon the Plaintiff's Attorney, or upon the Plaintiff, if he/she has no Attorney of record within 3 days after filing the Answer with the Court.

If you fail to appear and defend, judgment by default will be rendered against you for the relief demanded in the complaint.

July 25, 2022

LINDA H FRARY
CLERK, COURT OF COMMON PLEAS

By:

Deputy Clerk

******SUMMONS SENT BY REGULAR MAIL AS INSTRUCTED, ON DATE ABOVE.  PER CIV. R. 4.6(D), YOUR ANSWER DATE IS:_____

SHERIFF'S RETURN
Service and Return:      $_____
Mileage                  $_____
TOTAL                    $_____

How Served: (Mail   /   Person)
When Served: _____
            _____
            Sheriff

Cvsum01

EXHIBIT A



RICHLAND COUNTY
CLERK OF COURTS
FILED

2022 JUL 25  A 10: 39

LINDA H. FRARY
CLERK OF COURTS

## IN THE COMMON PLEAS COURT OF RICHLAND COUNTY, OHIO

Brian Benick
936 Paxford Place
Mansfield, OH 44906-2911

       Plaintiff

     v.

Nanogate North America, LLC
division of American Techniplas Group
150 E. Longview Ave
Mansfield, OH 44903-4206

       Defendant

Case No. 22 CV 355

ROBINSON

I, Linda H. Frary, Clerk of Courts
Richland County, Ohio, hereby certify that
the foregoing is a true and correct copy of the

Complaint

filed with me  7-25-22

Allie Blust

Deputy Clerk of Courts

---

### COMPLAINT

Plaintiff was employed at Nanogate North America LLC, division of American Techniplas Group, sporadically at this location over a period of 42 years, most recently as the EHS Assistant in the Environmental Health and Safety division 6/1/20 - 2/8/22. The following items were observed during this 20-month period:

1) Facility has an old shallow water well located inside the generator room which is directly plumbed into the water lines distributing City of Mansfield drinking water.  A valve is opened periodically to allow the well water to replace city drinking water. This well is under the influence of surface water and functioning as a public water system,

EXHIBIT A

defined by EPA regulations, and located in an industrial area. It has not been tested to determine if it meets the federal standards for public drinking water. Employees consume this water at sinks, drinking fountains, water coolers and ice machines. Plaintiff insists that the existence of this well be made known to the EPA, City of Mansfield and county health department to determine what, if any contaminants may have been ingested by employees while the facility has been using this well. This well cannot be adequately serviced when located inside the building. Plaintiff notified the CEO and Environmental Manager of this potentially dangerous situation, but they did not seem to grasp its significance, and nothing was done to comply with governmental requirements.

2) Facility uses the water well to provide a large continuous flow of water to dilute Kolene salt waste prior to discharge to the City of Mansfield sanitary sewer system. This unmetered flow of water appears to constitute theft of service from the City of Mansfield, in which case the cost would be borne by other City of Mansfield sanitary sewer customers, including Plaintiff—by a business with $128.5 million in annual sales.

3) Attached documentation demonstrates that Nanogate management failed to comply with OSHA training requirements (see pages 3 & 7), and even backdated federal training documentation. The CEO verified that the facility regularly backdates documents for purposes of audit compliance. The plant manager and the CEO were always notified of these requirements, but did nothing to ensure their supervisors complied. Plaintiff became very frustrated after several months with this lack of responsibility and compliance with federal requirements.

4) Attached documentation demonstrates Plaintiff updated all training documents, as the former EHS Director and Environmental Manager had created powerpoint videos primarily used for their outside training business which consumed at least half their time during work hours at Nanogate. CEO was aware of their outside business, and he advised Plaintiff the employees hated these presentations. Managers lied about training being completed on audit documents. Plaintiff assumed the workload of four employees during his time working in the EHS division.

5) Attached documentation demonstrates that, despite numerous notices from Plaintiff to managers, management repeatedly failed to make sure forklift operators were documented as being trained prior to operating a forklift, as required by federal law. Managers were even notified to conceal this fact for audit purposes.

6) Attached documentation demonstrates numerous notices were sent from Plaintiff to managers, regarding certain employees required to utilize hearing protection in accordance with federal law, which were continually ignored. Facility advertised for new employees, stating "limited PPE" required and employees have "the ability to listen to their own music," which increases the risk of hearing loss without the use of approved

2

EXHIBIT A

devices (see page 5). Employees had to pay for earbuds that were not approved, although approved devices are required to be provided at no cost to employees in accordance with federal law (see page 6).

7) Attached documentation demonstrates Ebrite division management, in particular, continued to ignore training documentation requirements throughout Plaintiff's tenure at the facility, including for hearing protection, forklift operation, fire extinguisher use and first responder awareness. The CEO and plant manager were always copied on this correspondence, but did nothing to ensure compliance.

8) Attached documentation demonstrates the majority of emergency lighting and exit signs did not function. Power outages were observed on two occasions, whereupon employees had to fumble about in complete darkness.

9) Attached documentation demonstrates management was notified numerous times regarding forklift operators smoking cigarettes while refueling their machines with natural gas. Several No Smoking signs were posted, but employees continued to ignore warnings and smoke in this area. Nothing was done to address this behavior during Plaintiff's tenure at this facility (also see #13, pages 4 & 8). Although facility has about 100 cameras to monitor employee conduct, no cameras were ever installed in this area.

10) Attached documentation demonstrates that Plaintiff's direct supervisor, the plant manager, had to be notified several times to complete federally-required training documents. At the beginning of Plaintiff's tenure, the CEO and plant manager had not completed required annual training for several years.

11) Attached documentation demonstrates that forklift operators drove recklessly through the most dangerous location at the facility, and employees regularly had to take cover to avoid being hit. Nothing was done to remedy this situation despite Plaintiff regularly notifying managers to do so. Plant manager was observed hanging off the side of a forklift while it was speeding thru this area.

12) Attached documentation demonstrates complaints were made to OSHA by employees, to which Plaintiff had to respond. However, management never complied with Plaintiff's responses after Nanogate was fined by OSHA. Employees were not required by managers to wear protective footwear, and robots were not locked out, both items required by OSHA. Several employees notified Plaintiff they had been slammed into walls or knocked down by robots while cleaning the machines. OSHA requires that power supply to robots be shut off and breaker switch locked out during maintenance. Plaintiff was informed it was too much of a hassle because supervisors went home before employees were done cleaning live robots, which was reported to the CEO (see page 10). Plaintiff informed OSHA certain devices would be used to protect employees, but these were never used (see pages 8 & 9) as promised by the CEO and other

3

EXHIBIT A

managers. Other facilities require their employees to wear steel-toed footwear, while this facility allowed employees to wear whatever they wanted (see #6, page 5), stating in their ads employees could wear "casual work attire." Employees wore items like skimpy shorts, halter tops, pajama pants and open-toed sandals, even working in their bare feet. Plaintiff strongly advised new employees during orientation to wear long jeans and steel-toed footwear, although Plaintiff had no authority over employee conduct. The CEO and plant manager placed Plaintiff in a position where he could have been fined or incarcerated for providing false claims to OSHA.

13) Attached documentation demonstrates that the garbage compactor area was not maintained, with compactor box damaged and allowing garbage and plastic beads to flow into the storm drain located underneath and next to the compactor, in violation of federal stormwater regulation prohibitions. Plaintiff notified CEO and plant manager several times, but nothing was done during Plaintiff's tenure at the facility. The head of maintenance stated that plastic beads were four feet deep in the catch basin when he got around to cleaning it out.

14) Attached documentation demonstrates that the vice president of human resources repeatedly admonished Plaintiff for communicating violations and his assessments via email.  Plaintiff's office was not located in the facility, nor even on the same road. Email was his only method of communicating to management. HR VP took several steps to prevent Plaintiff from doing his job, ultimately blaming him for his efforts "not working," despite management ignoring his multitude of notices. As this HR VP was a new hire, it was apparent to Plaintiff this person was assigned to stop Plaintiff from trying to do his job. This person would not allow Plaintiff to assign responsibility to a forklift operator for failing to ensure semi trailer wheels were chocked before entering the trailer, causing an incident which could have ended in his death when his machine fell to the ground. Other facilities would have terminated this individual, as well as his supervisor, for such serious negligence.

The attached documentation demonstrates repeatedly that forklift operators were required to be regularly trained to chock trailer wheels, although Plaintiff was prevented from speculating why the incident occurred or assign blame. Plaintiff was advised his goal was to protect employees from injury—the attached documents demonstrate his attempts to do so and the results. The HR VP harassed and bullied Plaintiff for attempting to do his job, claiming she was some type of expert, although she has never worked in health and safety, nor has a public health or environmental health degree. Without the multitude of attached emailed notices, there would be no documentation showing this facility's egregious lack of accountability and responsibility—evidently what the HR VP intended to accomplish. Plaintiff had no other option than to resign.

Plaintiff could have been fined and incarcerated for this facility failing to comply with federal regulations, if such had resulted in a serious injury or death. This has been the

4

case at other facilities. After working 33 years as a health inspector, it is Plaintiff's determination that this facility is one of the most egregious violators he has ever been involved with. As the HR VP had blamed Plaintiff for his efforts "not working," it is Plaintiff's intent that this lawsuit achieve what Plaintiff could not, likely not even within the additional 18 years he had planned to work at this facility (his father worked there until he was 79). Therefore, damages are claimed at $2,900,000, the amount he would have earned during this time, and for requiring him to lie to OSHA, forcing him to accept backdated documents, preventing him from adequately protecting the employees, holding him responsible for the failure of others to comply with federal laws and ultimately bullying him to resign.

The CEO told Plaintiff he was doing "an amazing job" on February 7, 2022, but the newly hired HR VP was evidently given blanket authority by the corporate CEO to do as she wished, compelling Plaintiff to resign the very next day.

The management at this facility has nearly a total disregard for environmental protection, employee health and employee safety. Plaintiff shall solicit testimony by OEPA, OSHA, City of Mansfield and the county health department to validate Plaintiff's statements before jury trial.

5

EXHIBIT A

## LIABILITY AND DAMAGES

Plaintiff complains for damages of $2,900,000, for loss of income because of being forced to resign under harassment, and prevented from performing his duties to protect the environment and the health of approximately 194 employees, forced to lie to federal enforcement agencies, required to accept forged documents and exposed to potential fines and incarceration for the neglect of Nanogate management.

6

EXHIBIT A

#3, p. 1

 Gmail

**Brian Benick <brianbenick@gmail.com>**

---

## FW: OSHA Mandated Trainings
1 message

---

**Brian Benick <Brian.Benick@nanogate.com>**                        Thu, Sep 2, 2021 at 10:28 AM
To: "brianbenick@gmail.com" <brianbenick@gmail.com>

**From:** Brian Benick
**Sent:** Thursday, September 2, 2021 8:54 AM
**To:** Scott Van Dine <Scott.VanDine@nanogate.com>; **Dave Rankin** <Dave.Rankin@nanogate.com>; Dan Hensel <Dan.Hensel@nanogate.com>
**Cc:** Paul Boggs <Paul.Boggs@nanogate.com>; **Pam Oswalt** <Pam.Oswalt@nanogate.com>; Dee Cochran <Dee.Cochran@nanogate.com>; Chris Finnegan <Chris.Finnegan@nanogate.com>
**Subject:** RE: OSHA Mandated Trainings

I mean what I say, Scott. I believe he backdated all of them and just went around and collected signatures, so employees signed their name to his made-up date and not the date of the signature. That's plain wrong, dragging them into his deception. I don't believe he sat down with them, nor did they even read them. This isn't the right thing! If you guys were doing the right thing, you would have had these done months ago, and avoided any potential audit problems! Maybe we ought to ask OSHA if you did the right thing. Clearly you don't get it, and that underscores the problems with your division. If Dave and Dan don't get it either, these problems extend even further than I thought. I don't mince words, nor do I kowtow to anyone, especially liars. If I don't fit in here, someone needs to have the courage to tell me so. I've made things as easy as can be for Nanogate, and I'm dedicated to what's important to keep this place productive and out of the line of fire. If you and your staff wanna keep dragging your feet and screwing around with federally mandated documents, you are clearly the problem, not me. And a liability to this company. That's what I mean. Any more questions, come see me.


Here it is: I have nothing against you, Chris, Dave, Dan, anyone. You're all good guys and I like all of you. Based on your email, I can hardly blame Chris for this. Since you copied Dave and Dan, perhaps they agree with you. Since I've had to hound them to turn in these documents, you're probably correct. I should never have to ask anyone to do something twice. No one ever has to ask me to do something more than once! My philosophy, as drilled into my head by my father, is that you're always looking out for the best interest of the company. That means you never do anything that could get the company in trouble. Specifically, my job is to look out for the safety and health of the employees, which includes training and educating them. Either you're a help or a hindrance to the company. If you don't do what you're supposed to do, or what you're told to do, you're a hindrance, plain and simple. I do not look out to protect the asses of individuals if they're potentially hurting the company, or else I'm doing the same thing.


Nobody has told me one time since I've been back, that I'm not doing what I'm supposed to do. Not once. Everything I'm asked to do, I do right away. I cover across town, too. Wonder, if like you, I didn't check fire extinguishers for three months? Or I didn't refill first aid kits for three months? Wonder if these trainings weren't done in accordance with OSHA standards, and they stopped in, like they just did? Would that be my fault, or yours? You don't lie on documents to compensate for not doing your job! How in the hell did you ever arrive at the point where you think that could be justified?? Obviously, there's a systematic culture problem here that, as far as I'm concerned, needs to be drummed out of everyone. It's seems to be mostly laziness then rushing to cover it up. Why do I see your operators watching videos all day? Why do I see one of your operators sleeping on the job? Why do your supervisors huddle in your office, instead of being out on the floor where they should be?

EXHIBIT A

#S. P. L

Don't you dare turn this around as if I'm not a team player trying to make sure we look good on an audit! That's pure bullshit. Own your own mistakes, buddy. Every day that goes by without this matter being addressed as it should be lowers my confidence in this company staying profitable long term. OSHA fines are very expensive. I'm doing all I can to avoid them. How about you?

From what I've seen over the past year, there's a lot of people here that need a good kick in the ass. Pointing that out may cost me my job. In that case, that's a good thing, cuz I don't want to spend my hours wasting my time when nobody else cares. I can go somewhere else where maybe people give a damn, fine with me.

**From:** Scott Van Dine
**Sent:** Wednesday, September 1, 2021 2:41 PM
**To:** Brian Benick <Brian.Benick@Nanogate.com>; Dave Rankin <Dave.Rankin@nanogate.com>; Dan Hensel <Dan.Hensel@nanogate.com>
**Subject:** RE: OSHA Mandated Trainings

What do you mean you will not accept Chris Finnegan's paperwork because it is back dated? He thought he was doing the right thing, for audit purposes.

Best regards,

Scott Van Dine
Manager I E-Brite

/\a/\ogate

**Nanogate North America LLC**          Phone   +1 419 524 3778
150 E Longview Ave                              Desk   +1 419 521 0146
Mansfield, OH 44903 I USA

scott.vandine@nanogate.com          t  f  in  𝕏
www.nanogate.com

**Managing Director: Paul Boggs**

**From:** Brian Benick <Brian.Benick@Nanogate.com>
**Sent:** Tuesday, August 31, 2021 11:56 AM
**To:** Dave Rankin <Dave.Rankin@nanogate.com>; Scott Van Dine <Scott.VanDine@nanogate.com>; Dan

EXHIBIT A

#5, p. 5

<Scott.Shrader@nanogate.com>; **Pam Oswalt** <Pam.Oswalt@nanogate.com>; **Ken Bodnar**
<Ken.Bodnar@nanogate.com>; **Tom Pickworth** <Tom.Pickworth@nanogate.com>
**Cc:** Paul Boggs <Paul.Boggs@nanogate.com>; Dee Cochran <Dee.Cochran@nanogate.com>
**Subject:** OSHA Mandated Trainings

The following employees are due for OSHA training as indicated:

FORKLIFT:

Ebrite   Karim Walker             due 4/10/21      document submitted 8/11, appears to have been backdated by Finnegan to 8/2/21, will not accept          4th notice

Ebrite   Kevin Day                due 6/18/21    document submitted 8/11/21, appears to have been backdated by Finnegan to 8/2/21, will not accept          3rd notice

Ebrite   Christopher Finnegan   due 8/2/21       document submitted 8/11/21, appears to have been backdated to 8/2/21, Finnegan dated Rankin signature, will not accept   4th notice

Ebrite   Kiefer Furlong           due 9/4/19      document submitted 8/11/21, appears to have been backdated by Finnegan to 8/2/21, will not accept          4th notice

Ebrite   Tylor Wolf               due 4/10/21     document submitted 8/22/21, appears to have been backdated by Finnegan to 8/2/21, will not accept          4th notice

Ebrite   Jordan Good              never done    employee cannot operate a forklift unsupervised until document completed and submitted

Ebrite   Jacob Fellows            never done    document submitted 8/11/21, appears to have been backdated by Finnegan to 8/2/21, will not accept          4th notice

Fab      Hunter Waterson          never done    employee cannot operate a forklift unsupervised until document completed and submitted

Paint    William Crissman Jr      never done    employee cannot operate a forklift unsupervised until document completed and submitted

Ebrite   Russell Brown            never done    employee cannot operate a forklift unsupervised until document completed and submitted


AERIAL LIFT:

Fab      Hunter Waterson          never done    employee cannot operate aerial lift unsupervised until document completed and submitted


COMPRESSED GAS, HOT WORK, WELDING SAFETY:

Fab      Adam Carman              never done    employee cannot do this work unsupervised until document completed and submitted

Fab      Hunter Waterson          never done    employee cannot do this work unsupervised until document completed and submitted


EXHIBIT A

#3, p. 4

**CRANES, OVERHEAD AND GANTRY:**

Fab    Hunter Waterson         never done      employee cannot operate crane unsupervised until document
completed and submitted

Mold   Matthew Carmel          never done      employee cannot operate crane unsupervised until document
completed and submitted


**WALKING AND WORKING SURFACES:**

Fab    Hunter Waterson         training document should have been completed at orientation, Dee, can you
verify?

Maint  Bailynd Restelli        did this employee attend orientation?, Dee, can you verify? If not done, needs
to be completed and submitted


**CONFINED SPACES:**

Fab    Hunter Waterson         never done      employee cannot enter confined space until document
completed and submitted


**FIRE EXTINGUISHER:**

Ebrite   Willie Myers          never done       complete and submit

Ebrite   Scott Van Dine        due 7/9/21
                                                                     2nd notice

Ebrite   Christopher Finnegan  due 10/1/20     document submitted 8/11/21, appears to have been backdated
to 8/2/21, will not accept                              4th notice

Ebrite   Cody Sipe             due 8/3/21

Paint    Nicholas Grimes       due 7/9/21
                                                                     2nd notice

BMC      Joel Vanbuskirk       never done       complete and submit

Ebrite   Jordan Good           never done       complete and submit

Qual     Shelby Branham        never done       complete and submit

Ebrite   Jacob Fellows         never done       document submitted 8/11/21, appears to have been
backdated by Finnegan to 8/2/21, will not accept            4th notice

Mgmt     Dan Hensel            7/11/18
                                                                     3rd notice


**HEARING TEST, OCCUPATIONAL NOISE EXPOSURE:**

Fab    Hunter Waterson         never done, hired 8/30/20      arrange for test, training document should have

EXHIBIT A

#3, p. 5

Paint    Kirby  Sam Sprankle       never done, hired 5/17/21       arrange for test, training document should have been completed at orientation, Dee, can you verify?

**FIRST RESPONDER AWARENESS:**

Ebrite   Kevin Day                never done       document submitted 8/11/21, appears to have been backdated by Finnegan to 8/2/21, will not accept                3rd notice

Ebrite   Chris Finnegan           never done       document submitted 8/11/21, appears to have been backdated to 8/2/21, will not accept                3rd notice

Mgmt    Dan Hensel               never done
                                                                                                  3rd notice

JTR      Adam Stine               never done
                                                                                                  3rd notice

Ebrite   Scott Van Dine           never done
                                                                                                  3rd notice

As if it wasn't already obvious, employees are required to review these documents, with their supervisor, to ensure any questions are addressed, then print their own name themselves, sign their name and date their signature, themselves, for the date when they signed the document! When required, supervisors are to sign to validate training was done, any questions were answered, and that they, themselves, will ensure the employee complies with the requirements. I will not accept forged documents from anyone!! And if employees are not held accountable for doing so, then I need to be informed to find another job. Additionally, as if this wasn't obvious, when I inform a supervisor that one of their employees has made an error in any way, or needs to do anything, it's not intended for the supervisor to simply pass it along to engender ill will towards me or anyone else. Such communication should be handled professionally and geared towards improvement. Thank you.

Brian

Confidentiality Notice: The information included in this e-mail, including any attachments, is for the sole use of the intended recipient and may contain information that is confidential. Any unauthorized review, use, disclosure, distribution or similar action is prohibited. If you are not the intended recipient, please contact the sender and delete all copies of the original message immediately.

EXHIBIT A

#3, p. 6

 Gmail

Brian Benick <brianbenick@gmail.com>

---

## FW: training
1 message

**Brian Benick** <Brian.Benick@nanogate.com>                     Tue, Sep 7, 2021 at 2:17 PM
To: "brianbenick@gmail.com" <brianbenick@gmail.com>

**From:** Brian Benick
**Sent:** Tuesday, September 7, 2021 2:02 PM
**To:** Pam Oswalt <Pam.Oswalt@nanogate.com>
**Subject:** training

Just wanted to vent, make sure I got this right. Just ran into Finnegan, and, predictably, he was all pissed off and refused to accept my apology for hurting his feelings. So, an employee cannot do what he's supposed to do, allow a young kid to drive around the plant in a three-ton vehicle with no documentation of training, subject the company to audit problems and potential OSHA problems, including huge fines, purposely backdate documents and make employees sign them, BUT, I'm the asshole for pointing it out as part of my responsibilities? THEN, I apologize, when he is the one who did all these things wrong, and he refuses to accept an apology that is not justified and would have never been considered to begin with if he had simply done his job after repeatedly being reminded to do so for four months?

This is the American dynamic these days, and we can only imagine how much worse it's going to get. He's gainfully employed and I'm the ass for hurting his feelings. I already had spoken directly to his boss about this crap, but I guess I could have handled it better by ignoring it or continue to be ignored and be a "nice guy." In any other country, he'd be beside himself apologizing and trying to keep his job, but not in America. Because we're progressive and no one deserves to be reprimanded in any way for anything. Because it might hurt their feelings, and then someone else is responsible and in the wrong for doing that to them.

To compensate, I'm going to nominate Chris Finnegan for Employee of the Year at Nanogate North America LLC.

Confidentiality Notice: The information included in this e-mail, including any attachments, is for the sole use of the intended recipient and may contain information that is confidential. Any unauthorized review, use, disclosure, distribution or similar action is prohibited. If you are not the intended recipient, please contact the sender and delete all copies of the original message immediately.

EXHIBIT A

#3, p.7

 Gmail

Brian Benick <brianbenick@gmail.com>

## FW: training
1 message

**Brian Benick** <Brian.Benick@nanogate.com>
To: "brianbenick@gmail.com" <brianbenick@gmail.com>

Mon, Jan 24, 2022 at 12:58 PM

**From:** Brian Benick
**Sent:** Monday, January 24, 2022 1:01 PM
**To:** Scott Van Dine <Scott.VanDine@nanogate.com>
**Cc:** Dan Hensel <Dan.Hensel@nanogate.com>; Christina Simpkins <Christina.Simpkins@Nanogate.com>; Paul Boggs <Paul.Boggs@nanogate.com>; Dave Rankin <Dave.Rankin@nanogate.com>
**Subject:** training

Hello Scott,

The following employees are due for OSHA training, as indicated. Please review the attached training documents with them, and return them to the EHS mail slot.

Forklift

Willie Myers——expired 10/24/21, repeat notice

Scott Van Dine——expired 10/24/21, repeat notice

Lance Porch——expired 10/24/21, repeat notice

Thomas Duffey——expired 10/24/21, repeat notice

Kenneth Vogt——expired 10/25/21, repeat notice

Jason McCabe——expired 10/23/21, repeat notice

Michael Manley——expired 10/24/21, repeat notice

Russell Restelli——expired 11/28/21, repeat notice

Matthew Clift—none, hired 6/14/21, repeat notice, not permitted to operate a forklift until training completed

Dalton Ison—none, hired 9/6/21, repeat notice, not permitted to operate a forklift until training completed

The following employees are required to have training in Hazard Communication, Emergency Action Plan, Occupational Noise Exposure, PPE and Fall Prevention upon being hired. These are presented to them during orientation, when that is done:

EXHIBIT A

#3, p.8

Christy Merrell—hired 7/26/21

Timothy Crabtree—hired 9/27/21

Chad McGuire—hired 10/24/21

Cheyanne Behrendsen—hired 10/24/21

Amont Owens—hired 10/7/21

Anika Bronson—hired 10/14/21

Brianne White—hired 10/20/21

Charisma Patterson—hired 12/14/21

Jacob Henderson—hired 12/20/21

Hailey Fife—hired 1/17/22

Linda Tackett—hired 1/17/22

Taylor Smith—hired 1/17/22

Sandra Tackett—hired 1/17/22

John Bryant, Jr.—hired 1/17/22


The following employees are due for an annual hearing test. Please let me know when it is convenient to conduct these:


Taryn Cox—last tested 4/11/19

Jessica Johnson—last tested 11/10/16

Telecia Morris—last tested 6/20/18

Jessica Frontz—last tested 8/28/18

DeeDee George—none, hired 8/30/21, repeat notice

Makayla Meyer—last tested 6/20/18

Holly Snyder—last tested 5/14/19

Brandy Aites—last tested 8/30/18

Susan Debo—last tested 4/30/19

Andrew Sigler—last tested 4/30/19

Tara Coleman—last tested 4/11/19

Paul Glasgow—last tested 3/26/19

Michael Manley—last tested 3/26/19

Christina Bess—last tested 5/14/19

Bryan Rock-Lukowski—last tested 2/13/20

Jacob Beard—last tested 12/10/19

EXHIBIT A

#3, p.9

Ron Wilson—last tested 8/28/18

Travis Behrendsen—last tested 8/28/18

Katelyn Morley—last tested 6/20/18

Kozetta Cogar—last tested 8/8/18

Stacey Messer—last tested 11/2/16

Samantha Witte—last tested 4/11/19

Lance Porch—last tested 4/11/19

Montashia Christopherson—last tested 12/10/19

Karen Hindenlang—last tested 8/30/18

Jordan Good—last tested 5/14/19

Kevin Day—last tested 10/1/18


Please let me know if you have any questions. Thanks.


Brian


Confidentiality Notice: The information included in this e-mail, including any attachments, is for the sole use of the intended recipient and may contain information that is confidential. Any unauthorized review, use, disclosure, distribution or similar action is prohibited. If you are not the intended recipient, please contact the sender and delete all copies of the original message immediately.



**6 attachments**

📄 **FORKLIFT OPERATOR CERTIFICATION.docx**
15K

📄 **HAZARD COMMUNICATION.docx**
15K

📄 **EAP.docx**
15K

📄 **OCCUPATIONAL NOISE EXPOSURE.docx**
13K

📄 **PERSONAL PROTECTIVE EQUIPMENT.docx**
14K

📄 **WALKING-WORKING SURFACES.docx**
14K


EXHIBIT A

# 4, p.1

 Gmail                                    **Brian Benick <brianbenick@gmail.com>**

---

## FW: Material Handlers
3 messages

**Brian Benick** <Brian.Benick@nanogate.com>                    Thu, Sep 2, 2021 at 10:29 AM
To: "brianbenick@gmail.com" <brianbenick@gmail.com>

**From:** Brian Benick
**Sent:** Monday, August 30, 2021 3:53 PM
**To:** Pam Oswalt <Pam.Oswalt@nanogate.com>; Dee Cochran <Dee.Cochran@nanogate.com>
**Cc:** Keith Oswalt <Keith.Oswalt@nanogate.com>
**Subject:** RE: Material Handlers

Paul mentioned to me recently the 5S was supposed to replace the 5 pillars, I honestly have no idea myself.

All the regulations pertaining to all the OSHA programs are on the documents I created for each one, as it was made clear to me that the powerpoints were not in favor and disrupted production to an intolerable level. Training and supervision of employees should be done by supervisors, in my opinion. I personally don't see the need for any of the EHS powerpoints, etc., although I'm new to all this, and just going by my best judgment. The material handler video deals with QC matters, not EHS, so I have no say on that one.

We were doing a lot of things that are not required to be done, while not doing some things that are. Orientation now covers five programs that are required to be covered with new employees. Fire extinguisher training is required annually for all those chosen to do so, although I have no idea how they are chosen, other than as indicated in their position descriptions. First responder training is required for first responders annually, although it wasn't even on the list previously, but taught to new employees, which it is not meant for. Dee created a new first responder list already, so this old one needs to be removed altogether. Again, I don't know how these individuals are chosen, other than, again, it's listed as such in their position descriptions. I didn't make any changes for these two trainings, as it is not my call. There is no need to separate out certain individuals for a separate first responder list, as far as I know. I did add the requirement to position descriptions if they were already on this separate list—just tryin to be consistent, nothing else, not my call

RCRA training is not required for small generators of hazardous waste. Ralph and Scott were doing overkill on a lot of this stuff, as these powerpoint trainings were made for their OSU students, not our employees, with them being taught to during work hours, scheduled for 50% of the time they were supposed to be working for Nanogate. Oops.

LOTO training is for those who do it—maintenance personnel, for example. Technically, those just exposed to it, such as machine operators, are required to basically be taught to not try to operate a machine if it's been locked out, which has been done here in the past and could result in death/serious injury. If a machine is locked out properly by maintenance, this would be impossible, but maintenance often doesn't adhere to the LOTO requirements. ==My experience so far has been that, if I inform the maintenance supervisor that his staff has screwed something up, he simply tells them what I said, as some sort of revenge—so they all treat me like crap, and that's all that gets done. Pretty dysfunctional, I'd say. I've already mysteriously got a four-inch bolt stuck in my tire while parked at the rear maintenance bay, where there's no cameras, so there's that. It was obviously propped up against my tire, so when I backed up, it pierced it. I'm not that dumb, and it was later obvious my vehicle experienced resistance when I backed up.== Anyway, I was trying to accomplish the maintenance personnel training first, before taking the second step with the operators, since OSHA training here is pretty much ignored and I thought prudent to take steps.

EXHIBIT A

#4, P.2

my vehicle experienced resistance when I backed up. Anyway, I was trying to accomplish the maintenance personnel training first, before taking the second step with the operators, since OSHA training here is pretty much ignored and I thought prudent to take steps.

Ralph is still shown on the Plex TO, to the side, although I have no idea what's going on with him or his position, and which one of us, Scott or me, may be in charge of the other, etc. Scott was still assigning me menial tasks, but I recently advised him to do these himself, nothing heard about it since. A bunch of stuff were in our position descriptions that is simply not required. I don't know why. Perhaps Ralph was running amok? I simply don't know… However, it's not listed in our descriptions what training we're supposed to attempt be accomplished, but I've communicated to Dee some time ago what trainings should be in Plex and which should not (attached), although I'm sure she's been busy with more new employees coming here than Mexicans are entering Texas.

How it works now is I'm doing what Karen did. I check Plex monthly for which employees need which training, as Dee enters them in Plex, according to their position descriptions, and then I notify the department heads to ensure their employees review, discuss, and the supervisors validate, the applicable training documents I attach to those emails. Except for Ebrite, this has been going decently. Ebrite unfortunately just committed the inherent weakness associated with this program, which is basically lying and deceiving, and dragging their staff into this deceit. I thought this would be quickly addressed when identified, but it has not. While working for health departments, I discovered four employees thru the years forging documents, and I threw them out on their asses. Apparently, in industry, the approach is different, even when multiplied by making subordinates complicit in these juvenile games.

There is no class for First Responder training. It involves simply printing out the document, reading it and signing it. I apologize if this is too difficult for some to accomplish after being notified to do so more than once. CPR, AED, First Aid, EAP annual review—none of this is required of us. EAP review is for new employees, and be posted, as it is now. I've made things much simpler, in many ways, but still not simple enough for Ebrite, and, despite assurances, I highly doubt the problem there has been rectified at all. Hasn't been up til now, despite repeated problems in accomplishing the simplest of tasks, evidently for years.

As for supplying the names of who's exposed to excess noise, as department heads were recently informed to provide Dee as I requested, I'll place my next paycheck up to bet against that, without hesitation. Across town, they complied right away, while already doing a much better than job than we were here to start with.

I find my job interesting, but frustrating. Seems like it's just a requirement, but not for seeing or hearing from. Trust me, there are many people here who would not want me in charge, as I didn't find ass dragging and lying in any of the position descriptions I reviewed.

Please let me know if I've missed anything. Thank you

**From:** Pam Oswalt
**Sent:** Monday, August 30, 2021 1:39 PM
**To:** Dee Cochran <Dee.Cochran@nanogate.com>; Brian Benick <Brian.Benick@Nanogate.com>
**Cc:** Keith Oswalt <Keith.Oswalt@nanogate.com>
**Subject:** RE: Material Handlers

In reviewing your mark up's

See attachments with notes in red along with below.

EXHIBIT A

#4, p.3

It is actually 5 pillars not 5 s based on our appendix EE

Also need to review what videos are under the EHS tab (home page) and see what needs to be used or if it just needs to be archived because we don't use.

Example tow motor training shows a lot – So what actually are we wanting them to do that is what we need to include on the OJT form after Tow motor training.

Same for Cranes , Overhead ….

You also show add First responder training to BMC supervisor , BMC Manager,

Material handler training there is a video for material handlers to watch – under product training.  Material handlers are suppose to watch

Do you want to review and see if it's still worth having them watch?

RCRA – Is this training no longer for anyone?

Lock out tag out on home page still good to go?

Dee – Org chart should be updated since we are still showing 3 people in EHS department and still have 3 OJT sheets for them.

Also on these Brian you crossed off training that is actually given or orchestrated by EHS so I believe that is why it is listed because these are min. requirements for this spots?

Aerial Platform, confined spaces, compressed Gas…,Walking surfaces training  – need to list where the training is found.

Also Dee you can confirm but I believe we took the First responder item off the individual position OJT's and just had a first responder OJT list of people to go by.

Not sure why there are so many that have not taken it.  Maybe make a mandatory Sat. class for them?

Best regards,

Pam Oswalt
Director of Quality I Quality Dept.



EXHIBIT A

#4, p. 4

Nanogate North America LLC
150 E Longview Ave
Mansfield, OH 44903 I USA

Phone  +1 419 521 0158
Mobile  +1 419 295 3517

pam.oswalt@nanogate.com
www.nanogate.com

t  f  in  𝕏

Managing Director: Paul Boggs

**From:** Pam Oswalt
**Sent:** Tuesday, August 24, 2021 2:13 PM
**To:** Dee Cochran <Dee.Cochran@nanogate.com>; Brian Benick <Brian.Benick@Nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>
**Subject:** RE: Material Handlers

Brian

If you go to our homepage and go to the OJT files you will see all the check sheets. ( see below)

For each department and then within the file there are tabs for each position.

If you can mark up what is no longer required then Dee can update the master files when she gets time next week hopefully.

Thanks



EXHIBIT A

#4, p-5

Best regards,

Pam Oswalt
Director of Quality I Quality Dept.

## na∧ogate

**Nanogate North America LLC**      Phone   +1 419 521 0158
150 E Longview Ave                  Mobile   +1 419 295 3517
Mansfield, OH 44903 I USA

pam.oswalt@nanogate.com      t  f  in  ‹
www.nanogate.com

Managing Director: Paul Boggs

---

**From:** Dee Cochran <Dee.Cochran@nanogate.com>
**Sent:** Tuesday, August 24, 2021 1:56 PM
**To:** Brian Benick <Brian.Benick@Nanogate.com>; Pam Oswalt <Pam.Oswalt@nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>
**Subject:** RE: Material Handlers


Amy is out all week. I am swamped with new hires and orientation. Brian if you could come over here, you are more than welcome to go through training records. I can help next week, but right now I have to get these new hires processed for payroll.

---

**From:** Brian Benick
**Sent:** Tuesday, August 24, 2021 1:37 PM
**To:** Pam Oswalt <Pam.Oswalt@nanogate.com>; Dee Cochran <Dee.Cochran@nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>
**Subject:** RE: Material Handlers


Ok, sounds good. If one of you can provide me those sheets, I'll review, update and return them. Thanks!

---

EXHIBIT A

#4, p.6

**To:** Brian Benick <Brian.Benick@Nanogate.com>; Dee Cochran <Dee.Cochran@nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>
**Subject:** RE: Material Handlers

Brian

It sounds like we need you to go through our current OJT check sheets and remove the training that is no longer required or supply the list to Dee so she can update the OJT training check sheets.

Thanks

Best regards,

Pam Oswalt
Director of Quality I Quality Dept.

# ⌐⌐a⌐ogate

**Nanogate North America LLC**            Phone   +1 419 521 0158
150 E Longview Ave                        Mobile  +1 419 295 3517
Mansfield, OH 44903 I USA

pam.oswalt@nanogate.com            t  f  in  ⌐(
www.nanogate.com

Managing Director: Paul Boggs

**From:** Brian Benick <Brian.Benick@Nanogate.com>
**Sent:** Monday, August 23, 2021 1:09 PM
**To:** Pam Oswalt <Pam.Oswalt@nanogate.com>; Dee Cochran <Dee.Cochran@nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>
**Subject:** RE: Material Handlers

I don't know about back then, although, as a small generator of hazardous waste, it is not a requirement for us to provide, and we no longer offer it

**From:** Pam Oswalt
**Sent:** Monday, August 23, 2021 12:58 PM
**To:** Brian Benick <Brian.Benick@Nanogate.com>; Dee Cochran <Dee.Cochran@nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>
**Subject:** RE: Material Handlers

Had he had RCRA training as it is also checked?

EXHIBIT A

#4 p-7

Best regards,

Pam Oswalt
Director of Quality l Quality Dept.

# nanogate

**Nanogate North America LLC**      Phone   +1 419 521 0158
150 E Longview Ave                  Mobile  +1 419 295 3517
Mansfield, OH 44903 l USA

pam.oswalt@nanogate.com         t  f  in  𝕏
www.nanogate.com

Managing Director: Paul Boggs

---

**From:** Brian Benick <Brian.Benick@Nanogate.com>
**Sent:** Monday, August 23, 2021 11:20 AM
**To:** Dee Cochran <Dee.Cochran@nanogate.com>; Pam Oswalt <Pam.Oswalt@nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>
**Subject:** RE: Material Handlers

All,

Finally, I can see from the writing on this document that it was Finnegan who completed and backdated eleven training documents for seven employees to sign, and also Rankin. Finnegan was so clever to date his own documents, as well as the others, for "August 2nd," although sign as the supervisor attesting the documents were completed by his staff, as required, on August 11th. I will not honor this, as I don't believe these documents were even read. As for the employment status of Finnegan, in my opinion, I will assume you can gather as much. There has been no meeting, or anything else, since this was made known to higher-ups. The forged documents are in my office, and they can stay there until they turn to mold. I guess this matter can stay unresolved until doomsday, or I can be replaced with someone having the ethical standards of Chris Finnegan. Thanks.

Brian

---

**From:** Dee Cochran
**Sent:** Monday, August 23, 2021 10:21 AM
**To:** Pam Oswalt <Pam.Oswalt@nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>
**Cc:** Brian Benick <Brian.Benick@Nanogate.com>
**Subject:** RE: Material Handlers

EXHIBIT A

#4, p.8

That is correct. Neither of those are yet completed.

**From:** Pam Oswalt
**Sent:** Monday, August 23, 2021 10:11 AM
**To:** Dee Cochran <Dee.Cochran@nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>
**Cc:** Brian Benick <Brian.Benick@Nanogate.com>
**Subject:** RE: Material Handlers

Just to confirm that neither of these trainings that were checked were actually completed back in Feb.?

Best regards,

Pam Oswalt
Director of Quality l Quality Dept.

ⁿaⁿogate

**Nanogate North America LLC**          Phone   +1 419 521 0158
150 E Longview Ave                              Mobile   +1 419 295 3517
**Mansfield, OH 44903 l USA**

pam.oswalt@nanogate.com          t  f  in  𝕏
www.nanogate.com

**Managing Director: Paul Boggs**

---

**From:** Dee Cochran <Dee.Cochran@nanogate.com>
**Sent:** Monday, August 23, 2021 10:06 AM
**To:** Pam Oswalt <Pam.Oswalt@nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>
**Subject:** RE: Material Handlers

Here you go. He just quit Friday too btw

---

**From:** Pam Oswalt
**Sent:** Monday, August 23, 2021 9:55 AM
**To:** Dee Cochran <Dee.Cochran@nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>
**Subject:** RE: Material Handlers

EXHIBIT A

#4, p.9

Dee

Can you send me a copy of Marcus original OJT that was turned in.

Thanks


Best regards,

Pam Oswalt
Director of Quality I Quality Dept.


# ⌁a⌁ogate

**Nanogate North America LLC**      Phone   +1 419 521 0158
150 E Longview Ave                  Mobile  +1 419 295 3517
Mansfield, OH 44903 I USA


pam.oswalt@nanogate.com      t  f  in  X
www.nanogate.com


Managing Director: Paul Boggs


---

**From:** Dee Cochran <Dee.Cochran@nanogate.com>
**Sent:** Wednesday, August 11, 2021 11:11 AM
**To:** Pam Oswalt <Pam.Oswalt@nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>
**Subject:** RE: Material Handlers


Yes, Brian took over training when Karen left and I have been taking care of OJT's. I have not sent out an ojt report as normal but they have been turned in pretty steady. The outstanding report is attached. JoAnn said she has Jeremy's and it will be in my mailbox this week.


---

**From:** Pam Oswalt
**Sent:** Wednesday, August 11, 2021 10:57 AM
**To:** Dee Cochran <Dee.Cochran@nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>
**Subject:** RE: Material Handlers


Gotcha can you confirm this and then how is it tracked from that point?  Maybe by Safety?


Best regards,

Pam Oswalt
Director of Quality I Quality Dept.

EXHIBIT A

#4, p.10

**∧a∧ogate**

Nanogate North America LLC     **Phone**   +1 419 521 0158
150 E Longview Ave           **Mobile**   +1 419 295 3517
Mansfield, OH 44903 I USA

pam.oswalt@nanogate.com     t   f   in   ✕
www.nanogate.com

Managing Director: Paul Boggs

---

**From:** Dee Cochran <Dee.Cochran@nanogate.com>
**Sent:** Wednesday, August 11, 2021 10:54 AM
**To:** Pam Oswalt <Pam.Oswalt@nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>
**Subject:** RE: Material Handlers

<mark>So that would mean the OJT was not complete with a tow motor license when turned in.</mark>

---

**From:** Pam Oswalt
**Sent:** Wednesday, August 11, 2021 10:35 AM
**To:** Dee Cochran <Dee.Cochran@nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>
**Subject:** RE: Material Handlers

I don't see him on the last OJT e-brite report that I got in May as being red?

Best regards,

Pam Oswalt
Director of Quality I Quality Dept.

**∧a∧ogate**

Nanogate North America LLC     **Phone**   +1 419 521 0158
150 E Longview Ave           **Mobile**   +1 419 295 3517
Mansfield, OH 44903 I USA

pam.oswalt@nanogate.com     t   f   in   ✕
www.nanogate.com

Managing Director: Paul Boggs

EXHIBIT A

#4, p.11

**From:** Dee Cochran <Dee.Cochran@nanogate.com>
**Sent:** Wednesday, August 11, 2021 10:26 AM
**To:** Pam Oswalt <Pam.Oswalt@nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>
**Subject:** RE: Material Handlers

Marcus Vest has been a Material handler since 2/15 but Crissman just started here on 8/2

**From:** Pam Oswalt
**Sent:** Wednesday, August 11, 2021 10:08 AM
**To:** Dee Cochran <Dee.Cochran@nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>
**Cc:** Dee Cochran <Dee.Cochran@nanogate.com>
**Subject:** RE: Material Handlers

We will try

How long have they been here?

Are they within the yellow status for training?  If they are it should not be an issue.

Thanks

Best regards,

Pam Oswalt
Director of Quality I Quality Dept.

## ⅄a⅄ogate

| | | |
|---|---|---|
| Nanogate North America LLC | Phone | +1 419 521 0158 |
| 150 E Longview Ave | Mobile | +1 419 295 3517 |
| Mansfield, OH 44903 I USA | | |

pam.oswalt@nanogate.com      t  f  in  𝕏
www.nanogate.com

Managing Director: Paul Boggs

**From:** Cochran, Deidra <Dee.Cochran@nanogate.com>
**Sent:** Wednesday, August 11, 2021 8:03 AM
**To:** Keith Oswalt <Keith.Oswalt@nanogate.com>; Pam Oswalt <Pam.Oswalt@nanogate.com>

EXHIBIT A

#4, p.12

Hi Pam,

Just an FYI, we have 2 Material Handlers that do not have a fork lift license if you want to steer clear of them during your audit.

There are 2 EB Operators that should have a license also, but I didn't think that would be a problem. All 4 are listed on the attached.

If you need anything, just let me know.

Dee


Confidentiality Notice: The information included in this e-mail, including any attachments, is for the sole use of the intended recipient and may contain information that is confidential. Any unauthorized review, use, disclosure, distribution or similar action is prohibited. If you are not the intended recipient, please contact the sender and delete all copies of the original message immediately.

---

 **EHS Trainings in Plex.docx**
20K

---

**Brian Benick** <Brian.Benick@nanogate.com>                          Thu, Sep 2, 2021 at 10:29 AM
To: "brianbenick@gmail.com" <brianbenick@gmail.com>

---

From: Brian Benick
Sent: Wednesday, August 25, 2021 10:24 AM
To: Pam Oswalt <Pam.Oswalt@nanogate.com>; Dan Hensel <Dan.Hensel@nanogate.com>; Paul Boggs <Paul.Boggs@nanogate.com>
Cc: Dee Cochran <Dee.Cochran@nanogate.com>
Subject: RE: Material Handlers


That is correct. I would think Ebrite to be our premier division, all that flash and high tech, as opposed to, let's say, BMC. However, the comparison is exactly the opposite, and it's a culture a long time in the making. One can compare the Scotts, the supervisors and the operators, and the differences are incredible. I took a photo of an Ebrite operator last week, fast asleep in his chair. The operators watch Youtube videos all day, while the division leader is within an office, within another office, with his door closed. Joe doesn't even know half the time if he's even in there or not. Schrader is hardly ever in his office—he's out on the floor. Compare Roderick to either of the three Ebrite supervisors—not even in the same solar system, in my opinion. I just say it as I see it. I make some enemies, although I see them as a bunch of whiney babies. It is what it is, no matter the excuses. Ebrite should be running like a NASA division, not some lowly bolt and nut shop.

---

From: Pam Oswalt
Sent: Wednesday, August 25, 2021 10:08 AM
To: Dan Hensel <Dan.Hensel@nanogate.com>; Paul Boggs <Paul.Boggs@nanogate.com>
Cc: Brian Benick <Brian.Benick@Nanogate.com>; Dee Cochran <Dee.Cochran@nanogate.com>
Subject: FW: Material Handlers


Brian was ok with me forwarding this.

EXHIBIT A

#4, p-13

But this is on going with E-brite and has resulted in audit findings / corrective actions in the past. Last corrective action to get them turned in on time was to champion Joe O. with bird dogging them.

However the information on all training documents needs to be accurate, not marked if not completed and actually reviewed with the operator to ensure that they understand what has been marked as completed and no questions, not just filled out handed to someone to sign and force them to back date.

Best regards,

Pam Oswalt
Director of Quality l Quality Dept.

ハaハogate

**Nanogate North America LLC**          Phone   +1 419 521 0158
150 E Longview Ave                      Mobile  +1 419 295 3517
Mansfield, OH 44903 l USA

pam.oswalt@nanogate.com        t  f  in  𝕏
www.nanogate.com

**Managing Director: Paul Boggs**

---

**From:** Brian Benick <Brian.Benick@Nanogate.com>
**Sent:** Monday, August 23, 2021 11:20 AM
**To:** Dee Cochran <Dee.Cochran@nanogate.com>; Pam Oswalt <Pam.Oswalt@nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>
**Subject:** RE: Material Handlers

All,

Finally, I can see from the writing on this document that it was Finnegan who completed and backdated eleven training documents for seven employees to sign, and also Rankin. Finnegan was so clever to date his own documents, as well as the others, for "August 2nd," although sign as the supervisor attesting the documents were completed by his staff, as required, on August 11th. I will not honor this, as I don't believe these documents were even read. As for the employment status of Finnegan, in my opinion, I will assume you can gather as much. There has been no meeting, or anything else, since this was made known to higher-ups. The forged documents are in my office, and they can stay there until they turn to mold. I guess this matter can stay unresolved until doomsday, or I can be replaced with someone having the ethical standards of Chris Finnegan. Thanks.

Brian

EXHIBIT A

#5, p.1

 Gmail                                          **Brian Benick <brianbenick@gmail.com>**

---

**FW: Marcus Vest**
5 messages

---

**Brian Benick <Brian.Benick@nanogate.com>**                    Thu, Aug 12, 2021 at 8:51 AM
To: "brianbenick@gmail.com" <brianbenick@gmail.com>

---

**From:** Brian Benick
**Sent:** Thursday, August 12, 2021 8:21 AM
**To:** Chris Finnegan <Chris.Finnegan@nanogate.com>; Scott Van Dine <Scott.VanDine@nanogate.com>; Dee Cochran <Dee.Cochran@nanogate.com>; Dave Rankin <Dave.Rankin@nanogate.com>; Pam Oswalt <Pam.Oswalt@nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>; Dan Hensel <Dan.Hensel@nanogate.com>; Paul Boggs <Paul.Boggs@nanogate.com>
**Subject:** RE: Marcus Vest

Here it is, folks:

OSHA requires documented training prior to a forklift operator operating a forklift. I would like to know how many items from the attached document were communicated to Mr. Vest by Mr. Finnegan before he got behind a three-ton vehicle and drive right past our employees. According to OSHA, though, it doesn't matter, because there's been no documentation of it. In their view, if there's no documentation, it didn't happen. I worked for government for 33 years, so I know how they operate. So, this young man has been driving through the shop for at least three months with no documentation of training. Employees have been hit by forklifts in this shop, in the past--more than once. OSHA is required to respond when this happens, because we're required to tell them when it does. There would be a mandatory fine right off the bat if that had happened in this case, because, again, there's been no documentation of training. Basically, then, zero documentation of, most likely, zero training. There will also be a lawsuit… I received zero training for driving a forklift when I worked here before 2001-2002…

Ralph expected employees to watch a dreadful hour-long 75 slide powerpoint presentation, intended to train an operator to operate a forklift. I created one piece of paper with all the regulations on it for the employee to review, discuss questions with their supervisor--who's supposed to be supervising them--then sign the document. The supervisor then signs off to verify, for the record, that the employee has read the requirements, understands the requirements, and that, he or she, as their supervisor, will ensure they comply with them. Now, the supervisor can elect to just have the employee sign without any review or discussion--and the supervisor then signs indicating they fulfilled this responsibility--but that's on his/her supervisor, in turn, to determine if he's/she's that duplicitous while working in our shop. I can't monitor any of this 24 hours a day, nor do I have any authority to do anything about any of it, as you can see in this case.

Now, some of you may have hurt feelings towards me, and maybe even forward me a smartass response. That's fine, because the training and safety of our employees are more important than your hurt feelings. I've made it as practical as possible, still covering the bases, with a minimum of interruption to production. I'm a company man, just like my father was. This is the best I could come up with. If the Ebrite supervisors do not take enough time, nor are directed to elicit a signature from their employees within three months, we definitely have a problem, somewhere. It's not me, folks, so don't take it out on me—definitely not the type of appreciation I appreciate…

EXHIBIT A

Brian

#5, P. 2

P.S. Chris, I still consider you as my friend, as, truly, none of this is meant to be personal. Hope you realize that.

**From:** Chris Finnegan
**Sent:** Wednesday, August 11, 2021 3:09 PM
**To:** Brian Benick <Brian.Benick@Nanogate.com>
**Subject:** RE: Marcus Vest

Those are completed and signed boss man. I put them in the EHS mailbox, have a wonderful day Brian.

**From:** Brian Benick <Brian.Benick@Nanogate.com>
**Sent:** Wednesday, August 11, 2021 1:04 PM
**To:** Dee Cochran <Dee.Cochran@nanogate.com>; Scott Van Dine <Scott.VanDine@nanogate.com>
**Cc:** Chris Finnegan <Chris.Finnegan@nanogate.com>; Pam Oswalt <Pam.Oswalt@nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>; Dan Hensel <Dan.Hensel@nanogate.com>; Paul Boggs <Paul.Boggs@nanogate.com>
**Subject:** RE: Marcus Vest

Dee,

I've been after Scott Van Dine for three months to get this done, three messages to him, last two copied to Dan and the last one to Paul. Markus has been driving forklift for over three months now. Finnegan can print this form off this afternoon and get Markus to read the thing for him and Chris to sign. He's also behind with these. Personally, I'm getting a little tired of notifying these guys and they do nothing in response. Hopefully, someone will finally do something about it this time. Thank you.

Brian

P.S. If we can't rely on Chris, please call me 567-307-5911 and I will be perfectly willing to do it myself, the only reliable way I'd trust. Don't want to hold up Pam and Keith.

**From:** Dee Cochran
**Sent:** Wednesday, August 11, 2021 10:59 AM
**To:** Brian Benick <Brian.Benick@Nanogate.com>
**Cc:** Chris Finnegan <Chris.Finnegan@nanogate.com>; Pam Oswalt <Pam.Oswalt@nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>
**Subject:** Marcus Vest
**Importance:** High

Hi Brian,

EXHIBIT A

#5 p.3

Marcus became a Material Handler on 8/15 and does not yet have a fork lift license. Could you take care of that this afternoon before our audit starts tomorrow please?

Best regards,

Dee Cochran
Director of Human Resources I HR Department



Nanogate North America LLC
150 E Longview Ave
Mansfield, OH 44903 I USA

Phone   +1 419 521 0103
Mobile  +1 567 274 2188
Fax     +1 419 525 7835

Dee.Cochran@nanogate.com
www.nanogate.com

t  f  in  𝕏

Confidentiality Notice: The information included in this e-mail, including any attachments, is for the sole use of the intended recipient and may contain information that is confidential. Any unauthorized review, use, disclosure, distribution or similar action is prohibited. If you are not the intended recipient, please contact the sender and delete all copies of the original message immediately.

📄 **FORKLIFT OPERATOR CERTIFICATION.docx**
15K

**Brian Benick** <Brian.Benick@nanogate.com>                    Thu, Sep 2, 2021 at 10:29 AM
To: "brianbenick@gmail.com" <brianbenick@gmail.com>

**From:** Brian Benick
**Sent:** Monday, August 30, 2021 2:02 PM
**To:** Pam Oswalt <Pam.Oswalt@nanogate.com>
**Subject:** RE: Marcus Vest

So, the type of dysfunction we're laboring under here is the ignore til it goes away variety (that is, the give a crap, not the problem itself)? Figured I'd verify with you, altho I know I'm short-circuiting havin all the pleasure of learnin it on my own!  Dad prob won't tell me what I really need to know; Paul/Dan treat me very well otherwise-- and I'm still tryin to learn the just roll with it attitude, so good guidance is much appreciated! Thank you

Also, Plex shows paintline, BMC and Ebrite under Rankin, under Rick—no connection to Paul/Dan/you/me. Is this another upheaval I missed, or did someone experience some type of limitation in making all the criss-

EXHIBIT A

#5, p.4

crossing lines of authority on their etch a sketch? I still have all my cross-town responsibilities, and would like to keep em, as they seriously do a better job over there with maintaining the OSHA training stuff. Thanks

**From:** Pam Oswalt
**Sent:** Friday, August 27, 2021 3:12 PM
**To:** Brian Benick <Brian.Benick@Nanogate.com>; Pam Oswalt <Pam.Oswalt@nanogate.com>
**Subject:** RE: Marcus Vest

Oh my

But all the truth

I dont think the apple feel far from the tree.

I've seen your dad in action a few times , but he usually just said it softly but a time or two he voiced it.  Lol

I really want to respond back and why and how is it going to be different , we've been around this same tree several times.

Have a great weekend

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------

From: Brian Benick <Brian.Benick@Nanogate.com>

Date: 8/27/21 7:28 AM (GMT-05:00)

To: Pam Oswalt <Pam.Oswalt@nanogate.com>

Subject: FW: Marcus Vest

Taken care of? By backdating OSHA documents, one of which he signed? I'm sitting here biting my tongue clean through. He's the architect of all the Ebrite problems! He was a great boss when I worked for him 20 years ago. You know, a cool boss who blew off everything and made ya feel like a rebel? I was the worst forklift operator this place ever had, drove thru the shop as fast as that thing could go, no training, never one word to slow down... Now the shoe's on the other foot, and I'm reaping what I sowed. At least I own it. Now. Guess I'll just take a nap until 3. Perhaps call me then so I don't work overtime...

EXHIBIT A

#5, p.5

Did my Dad ever tell ya what a sarcastic little bastard I am?? I fasten my own noose, over and over again. Perhaps I need more counseling.


Have a good day!


**From:** Dave Rankin
**Sent:** Thursday, August 26, 2021 3:08 PM
**To:** Pam Oswalt <Pam.Oswalt@nanogate.com>; Brian Benick <Brian.Benick@Nanogate.com>; Chris Finnegan <Chris.Finnegan@nanogate.com>; Scott Van Dine <Scott.VanDine@nanogate.com>; Dee Cochran <Dee.Cochran@nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>; Dan Hensel <Dan.Hensel@nanogate.com>; Paul Boggs <Paul.Boggs@nanogate.com>; Rob Keough <Rob.Keough@nanogate.com>
**Subject:** RE: Marcus Vest


Hi Pam,

They should all be taken care of now. By the way, he no longer works here but I agree it should have been done before he ever drives a towmotor here. It will be handled differently from now on per Scott and Chris.


Thank You,

Dave Rankin


/la/logate


**Nanogate North America LLC**          **Phone**   +1 419 521 0133
150 E Longview Ave                              **Mobile**   +1 419 295 4275
**Mansfield, OH 44903 I USA**


dave.rankin@nanogate.com          t  f  in  ✗
www.nanogate.com


**From:** Pam Oswalt
**Sent:** Wednesday, August 25, 2021 9:12 AM
**To:** Brian Benick <Brian.Benick@Nanogate.com>; Chris Finnegan <Chris.Finnegan@nanogate.com>; Scott Van Dine <Scott.VanDine@nanogate.com>; Dee Cochran <Dee.Cochran@nanogate.com>; Dave Rankin <Dave.Rankin@nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>; Dan Hensel <Dan.Hensel@nanogate.com>; Paul Boggs <Paul.Boggs@nanogate.com>; Rob Keough <Rob.Keough@nanogate.com>
**Subject:** RE: Marcus Vest

EXHIBIT A

Et 5, p-69

<Dan.Hensel@nanogate.com>; Paul Boggs <Paul.Boggs@nanogate.com>; Rob Keough
<Rob.Keough@nanogate.com>
**Subject:** RE: Marcus Vest

Chris & Rob,

Why were the attached OJT sheets completed and marked that trainings were complete and they were not  ex.
Tow motor training?
If training is not completed it should not be marked on these OJT sheets as completed and should serve as a
reminder to you guys that it still needs completed.

Thanks

Best regards,

Pam Oswalt
Director of Quality l Quality Dept.

ппапоgate

**Nanogate North America LLC**      Phone  +1 419 521 0158
150 E Longview Ave                  Mobile  +1 419 295 3517
Mansfield, OH 44903 l USA

pam.oswalt@nanogate.com     t  f  in  X
www.nanogate.com

Managing Director: Paul Boggs

**From:** Brian Benick <Brian.Benick@Nanogate.com>
**Sent:** Thursday, August 12, 2021 8:20 AM
**To:** Chris Finnegan <Chris.Finnegan@nanogate.com>; Scott Van Dine <Scott.VanDine@nanogate.com>; Dee
Cochran <Dee.Cochran@nanogate.com>; Dave Rankin <Dave.Rankin@nanogate.com>; Pam Oswalt
<Pam.Oswalt@nanogate.com>; Keith Oswalt <Keith.Oswalt@nanogate.com>; Dan Hensel
<Dan.Hensel@nanogate.com>; Paul Boggs <Paul.Boggs@nanogate.com>
**Subject:** RE: Marcus Vest

Here it is, folks:

OSHA requires documented training prior to a forklift operator operating a forklift. I would like to know how many
items from the attached document were communicated to Mr. Vest by Mr. Finnegan before he got behind a
three-ton vehicle and drive right past our employees. According to OSHA, though, it doesn't matter, because

EXHIBIT A

#5, p.#7

 **Gmail**

Brian Benick <brianbenick@gmail.com>

## FW: Amont Owens forklift certification
1 message

**Brian Benick <Brian.Benick@nanogate.com>**                    Wed, Nov 10, 2021 at 9:50 AM
To: "Dave Benick (jinc3126@embarqmail.com)" <jinc3126@embarqmail.com>, "brianbenick@gmail.com"
<brianbenick@gmail.com>

**From:** Brian Benick
**Sent:** Wednesday, November 10, 2021 9:52 AM
**To:** Scott Van Dine <Scott.VanDine@nanogate.com>; Dave Rankin <Dave.Rankin@nanogate.com>
**Cc:** Dan Hensel <Dan.Hensel@nanogate.com>; Paul Boggs <Paul.Boggs@nanogate.com>; Chris
Finnegan <Chris.Finnegan@nanogate.com>; Pam Oswalt <Pam.Oswalt@nanogate.com>; Dee
Cochran <Dee.Cochran@nanogate.com>
**Subject:** Amont Owens forklift certification

According to Plex, Amont Owens was hired on October 7th and is presently working as a material
handler in the Ebrite division on second shift, with no record of being trained. Van Dine was notified on
the 22nd, see attached, to ensure Owens reviews the attached document and signs it along with
Finnegan.

As indicated before, our company would be in a precarious position if Owens was involved in a
reportable accident with no written record of training, as OSHA fines could account for a sizable chunk
of a mil, not to mention the financial hit if someone was injured.

I don't understand what seems to be a recurring failure of responsibility. I can only do what I can to
protect the company from potentially and needlessly hemorrhaging cash and reputation. The rest is up
to you.

Brian

Confidentiality Notice: The information included in this e-mail, including any attachments, is for the sole
use of the intended recipient and may contain information that is confidential. Any unauthorized review,
use, disclosure, distribution or similar action is prohibited. If you are not the intended recipient, please
contact the sender and delete all copies of the original message immediately.

**2 attachments**

 **FORKLIFT OPERATOR CERTIFICATION.docx**
15K

EXHIBIT A

8/17/22, 5:17 PM                    Case Details - Richland County, Ohio

## 2022 CV 0355 R BENICK, BRIAN VS NANOGATE NORTH AMERICA LLC

- Case Type:
- CIVIL
- Case Status:
- OPEN
- File Date
- 07/25/2022
- DCM Track:
-
- Action:
- OTHER CIVIL
- Status Date:
- 07/25/2022
- Case Judge:
- ROBINSON, JUDGE BRENT N
- Next Event:
- 10/25/2022

| All Information | Party | Docket | Event | Disposition | Financial | Service Records |

### Docket Information

| Date | Docket Text | Amount Owed |
|------|-------------|-------------|
| 07/25/2022 | DEPOSIT | $133.00 |
| | Attorney: PRO SE Receipt: 425377 Date: 07/25/2022 | |
| 07/25/2022 | HOUSE BILL FEE-CIVIL Receipt: 425377 Date: 07/25/2022 | $26.00 |
| 07/25/2022 | CLERK'S COMPUTER FEE-GEN DIV Receipt: 425377 Date: 07/25/2022 | $20.00 |
| 07/25/2022 | COURT'S COMPUTER FEE Receipt: 425377 Date: 07/25/2022 | $6.00 |
| 07/25/2022 | CLERKS FEES Receipt: 425377 Date: 07/25/2022 | $25.00 |
| 07/25/2022 | SPECIAL PROJECT FEE-CIVIL Receipt: 425377 Date: 07/25/2022 | $70.00 |
| 07/25/2022 | MEDIATION AND PROJECTS FUND Receipt: 425377 Date: 07/25/2022 | $20.00 |
| 07/25/2022 | COMPLAINT FILED. SCANNED 07/25/2022 AMB | $84.00 |
| | Attorney: PRO SE | |
| 07/25/2022 | SUMMONS CERTIFIED MAIL ISSUED SCANNED 07/25/2022 AMB | $2.00 |
| 07/25/2022 | CERTF COPY/CERT. MAIL TO Issue Date: 07/25/2022 Service: SUMMONS CERTIFIED MAIL - Method: CERTIFIED MAIL Cost Per: 10.0000 | $10.00 |
| | NANOGATE NORTH AMERICA LLC BUSINESS ADDRESS DIVISION OF AMERICAN TECHNIPLAS GROUP 150 E LONGVIEW AVE MANSFIELD, OH  44903 Tracking Number: 9414726699042186079004 | |
| | SCANNED 07/27/2022 AMB | |

EXHIBIT A

Case Details - Richland County, Ohio

| Date | Docket Text | Amount Owed |
|------|-------------|-------------|
| 07/28/2022 | SUCCESSFUL SERVICE<br>  Method   : CERTIFIED MAIL<br>  Issued    : 07/25/2022<br>  Service   : SUMMONS CERTIFIED MAIL -<br>  Served   : 07/26/2022<br>  Return   : 07/28/2022<br>  on      : NANOGATE NORTH AMERICA LLC<br>  Signed By : JACK<br>  Reason   : SUCCESSFUL SERVICE<br>  Comment  :<br>  Tracking #: 9414726699042186079004<br><br>  SCANNED 07/28/2022 AMB | |
| 07/29/2022 | HEARING SCHEDULED:<br>Judge: WURTHMANN, TAMMY L<br>Event: INITIAL SCHEDULING CONFERENCE WITH TAMMY WURTHMANN<br>Date: 10/25/2022  Time: 09:30 AM | |
| 07/29/2022 | HEARING SCHEDULED:<br><br>(n) Inital Scheduling Conference (CT.)<br>Sent On:  07/29/2022 08:59:51<br>Notice Sent To:  BRIAN BENICK 936 PAXFORD PLACE, MANSFIELD, OH 44906<br>Notice Sent To:  NANOGATE NORTH AMERICA LLC DIVISION OF AMERICAN TECHNIPLAS GROUP 150 E<br>LONGVIEW AVE, MANSFIELD, OH 44903 | |
| 07/29/2022 | HEARING SCHEDULED/ORDER FILED<br>SCANNED 07/29/22 BPD | $2.00 |
| 07/29/2022 | POSTAGE FEE<br>BRIAN BENICK<br>NANOGATE NORTH AMERICA LLC | $3.00 |

EXHIBIT A

8/17/22, 5:18 PM                                    Case Details - Richland County, Ohio

## 2022 CV 0355 R BENICK, BRIAN VS NANOGATE NORTH AMERICA LLC

- Case Type:
- CIVIL
- Case Status:
- OPEN
- File Date
- 07/25/2022
- DCM Track:
- 
- Action:
- OTHER CIVIL
- Status Date:
- 07/25/2022
- Case Judge:
- ROBINSON, JUDGE BRENT N
- Next Event:
- 10/25/2022

| All Information | Party | Docket | Event | Disposition | Financial | Service Records |

### Service Records

| Issue Date | Party Served | Tracking | Method | Status | Service Date |
|---|---|---|---|---|---|
| 07/25/2022 | NANOGATE NORTH AMERICA LLC DIVISION OF AMERICAN TECHNIPLAS GROUP 150 E LONGVIEW AVE MANSFIELD,  OH  44903 | 9414726699042186079004 | CERTIFIED MAIL | SUCCESSFUL SERVICE | 07/26/2022 |

EXHIBIT A